STATE *vs.* FRED O. PARKER.

Washington.    Opinion April 3, 1896.

*Game.   Possession.   Deer-Park.   R. S., c. 30, § 21; Stat. 1891, § § 10, 11.*

The respondent was complained of for killing a deer in close time in the enclosed deer-park on Petit Menan Point, in the town of Steuben, the park being the property of the Petit Menan Company, and the respondent being the owner of one-fifth of the deer in said park.

The deer was caught alive, when a fawn, on township No. 29, M. D. by another person in close time and sold the following year after his capture to another person who disposed of it to the respondent, the latter putting it into the park with other deer; and was in his possession continually until killed by him on the nineteenth day of June, 1894.

*Held;*   That, waiving all question of illegality in capturing the animal alive originally, a proper construction of the statute applicable to the facts does not admit of a conclusion that the deer in question was under such dominion and control of the respondent and his associates as to allow them to kill or hunt such animal in close time.   Their so-called possession was not actual and complete enough; was more fictitious than real.

The most that the proprietors can claim is that they possess by artificial means some facilities for capturing or recapturing deer within their woods, contained in a territory of seven or eight hundred acres, and perhaps for obtaining actual possession of the same dead or alive; and while that may be denominated an approach towards possession, a step in the direction of possession, to style such a condition of things as an absolutely actual possession, thereby giving the respondent complete property in the animals, would be far-fetched and visionary.

*Commonwealth* v. *Chase,* 9 Pick. 15, approved.

AGREED STATMENT.

The case appears in the opinion.

*T. W. Vose and Fred I. Campbell,* County Attorney, for State.

The lands covered by these preserves are substantially wild lands and the ponds and lakes within their limits nearly all great ponds, that is, containing ten acres or more.   The important question therefore arises : can the owner of these lands, or his lessee, exclude persons whose only entry is in the pursuit of game, and who are in no way injuring or disturbing his property or rights?   For the fish and game are not the property of the land owner.

The underlying principle of our State enactments contravenes

this right of private control of wild lands for hunting and fishing purposes, and, on the contrary, implies the right of the State to govern them. *Cottrill* v. *Myrick*, 12 Maine, 229; *Lunt* v. *Hunter*, 16 Maine, 10. In *Moulton* v. *Libbey*, 37 Maine, 472, SHEPLEY, Chief Justice, says: — " Whatever right the king had by his royal prerogative in the shores of the sea and of navigable rivers he held as a jus publicum in trust for the benefit of the people for the purposes of navigation and fishery." This was said of clam flats, the absolute title of which was in the plaintiff, in fee simple. But the point of the decision is that these great natural privileges were held in trust by the sovereign power for the people, and when the sovereign power transferred its title, this trust still attached.

In *Weston* v. *Sampson*, 8 *Cushing*, p. 347, the court in speaking of the right to fish on flats say: "We think that the mere fact that the jus privatum or right of soil was vested in an individual owner, does not necessarily exclude the existence of a jus publicum or right of fishery in the public."

The object of legislation, both in Massachusetts and Maine, has been to secure these great natural privileges to the public and not to confirm them in the few. It is also clear that our courts are in accord with the aims of such legislation.

It is evident, likewise, that those great natural prerogatives of the people, such as hunting and fishing, depend upon different considerations than those created by personal effort. Such prerogatives are older than constitutions and were in full enjoyment by the people when constitutions were made, and consequently the fundamental law has been made to yield when in conflict with them.

Such has been the course of legislative and judicial opinion, generally, upon questions affecting the common right.

The right to fish and hunt is a natural right; this right has been curtailed by law for the common good; it has been the policy of our legislature and our courts to secure and preserve the great natural advantages of our State for sporting to the people; and game preserves in this State, like similiar preserves in England, are hostile to and utterly destructive of these great public rights.

Possession: The court will take judicial notice that deer are feræ naturæ, and the presumption is that they must be hunted in some manner to be captured. Reducing a thing feræ naturæ into possession to create title in the possessor, the act of taking must have been a lawful act. *Blades* v. *Higgs*, 11 H. L. 621; *James* v. *Wood*, 82 Maine, 177. The deer was shot in close time. Stat. 1891, c. 95, § 10. *Com.* v. *Gilbert*, 160 Mass. 157. There is no proof or presumption that it was domesticated.

*Geo. E. Googins*, for defendant.

When a deer is taken alive by any person in the open season, or lawfully obtained at any other season of the year, such animal thereby becomes the legally acquired property of said person, and may be killed by its owner at any time. *Allen* v. *Young*, 76 Maine, 80; *James* v. *Wood*, 82 Maine, 178; Stat. 1878, c. 50, § 5.

The property in all the deer by the common law is in the State. A person holding a deer in confinement acquires qualified property in him, but absolute property when he kills such animal. There is no legislative enactment prohibiting private owners of deer from killing their own animals at any season of the year. The right to so kill their deer is one conferred by the common law, and their right cannot be taken away except by legislation.

There is a reasonable doubt as to whether Haycock hunted the deer "in any manner" within the meaning of the statute, and, the act being a penal one, a reasonable doubt is sufficient to make it the duty of the Court to adopt the more lenient interpretation and construe the law favorable to the party accused. The facts do not warrant the finding that Haycock captured the deer contrary to law.

It must clearly appear that Haycock's conduct in reducing the deer to possession was a violation of the statute before he could be punished even. *James* v. *Wood*, supra.

Haycock, though he may have committed an illegal act in the first place, was lawfully in possession between the first day of October and January following the capture of the deer. A person may be punished for their illegal acts, not their legal ones.

The respondent, Parker, obtained the deer during the open season. In obtaining possession of and acquiring title to the deer he violated no law of his State, neither did his vendor, Willey. The legal title in the deer had passed from the State to Haycock and from Haycock to Willey, before the respondent purchased the animal.

Any person coming into possession of a deer during the open season acquires legal qualified property if alive and confined, absolute property when killed. Before owners of deer can be prevented from killing them at any season of the year there must be some special legislative enactment prohibiting them. *Com.* v. *Gilbert*, 160 Mass. 157.

SITTING: PETERS, C. J., FOSTER, HASKELL, WHITEHOUSE, WISWELL, STROUT, JJ.

PETERS, C. J. The respondent was complained of for killing a deer in close time, and the question of his liability to be prosecuted therefor is presented to this court upon the following statement of facts agreed to by the parties:

"The respondent had in his possession at Steuben, in Washington County, on June 19th, 1894, parts of a deer, which said respondent killed on June 15th, 1894, being in close season, to wit: between the first day of January and the first day of October, in the enclosed deer-park on Petit Menan Point, in said Steuben; said park being the property of the Petit Menan Company, socalled, and said respondent being the owner of one-fifth of the deer in said park, in common with said company; said deer was caught alive, when a fawn, on Township No. 29, M. D., by Charles Haycock, in the month of June, 1888, being the close season, as aforesaid. That said Haycock sold said deer the following year after his capture to Horace F. Willey of Cherryfield, by whom it was kept until the month of November, 1890, when he, said Willey, sold it to said respondent, who then put it into the park aforesaid in company with other deer therein confined, and was in his possession continually until killed by the respondent as aforesaid.

The respondent was arrested by Game Warden Charles I. Corliss, and, on the fifth day of July, 1894, was arraigned before Jacob T. Campbell, Esq., a Trial Justice in and for said Washington County, at said Cherryfield, on complaint of said Corliss, charging said respondent with having in his possession at Steuben, June 19th, 1894, one deer and parts of a deer killed in close time, as aforesaid, whereupon said respondent waived examination, was found guilty by the magistrate, and sentenced to pay a fine of forty dollars and costs, from which sentence respondent appealed. The Law Court to affirm or disaffirm the decision of said magistrate, as the law and facts in the case warrant."

The respondent contends, upon the strength of the cases of *Allen* v. *Young*, 76 Maine, 80, *James* v. *Wood*, 82 Maine, 173, and *State* v. *Beal*, 75 Maine, 289, that the deer was so far within his dominion and control in open time as to have become his absolute property, with which he could at any time do as he pleased. The doctrine of the above cases has been lately emphasized somewhat by the decision of the court in *State* v. *Bucknam*, 88 Maine, 385, in which it has been distinctly held that, under our statutes, one who lawfully obtains the ownership of game in open time, in that case carcasses of deer, is not criminally liable for having the same in his possession in close time afterwards. Some of the States have decided that laws which do make such acts criminal are not unconstitutional, but that question did not arise in the case referred to.

We think, however, that, giving the respondent the fullest scope of protection which the doctrine of those cases can afford him, he fails to find in them any sufficient justification for his act. We refer to the act of killing the deer within close season, waiving now all question of illegality in capturing the animal alive originally.

Probably it would not be questioned that in particular instances animals feræ naturæ may be so far reclaimed and domesticated, or, if not reclaimed may be so closely subjected to confinement by a person, as to be regarded as under his dominion and control and to become his property. And, if captured or obtained at a proper

season and in a lawful manner, there might be no reason why such person should not control such property at all seasons as he might any other, subject however to any restraint upon the use of the same which may be imposed by our game laws.

But we think that a proper construction of the statute applicable to the facts in the case at bar does not admit of a conclusion that the deer in question was under such dominion and control of the respondent and his associates as to allow them to kill or hunt such animal in close time. Their so-called possession was not actual and complete enough; was more ficticious than real. The deer was roaming wildly over a park covered mostly by woods, as was stated when the case was reported, containing between seven and eight hundred acres of territory and surrounded on all sides by the sea, excepting at a narrow strip or neck connecting this, an almost natural park, with the main land, and artificial structures were placed across this neck to prevent the escape of animals therefrom. Animals kept within these wide boundaries cannot be said to be thereby either reclaimed or held in close confinement. Should they escape from the park either by sea or land into other woods, it would be preposterous for the proprietors of the park to set up an ownership in such animals against other persons who might kill or capture them off of their premises. The most that the proprietors can reasonably claim is that they possess by artificial means some facilities for capturing or recapturing deer within their woods, and perhaps for obtaining actual possession of the same either dead or alive; and, while that may be denominated an approach towards possession, a step in the direction of possession, to style such a condition of things as an absolutely actual possession, thereby giving the respondent complete property in the animals, would be far-fetched and visionary.

The ideas which we entertain on this subject are aptly illustrated by the remarks of the court in *Commonwealth* v. *Chace*, 9 Pick. 15, a case involving the question as to how far and under what conditions doves might be the subject of larceny, and we quote largely therefrom:

"It is held in all the authorities that doves are feræ naturæ

and as such are not subjects of larceny, except when in the care and custody of the owner; as when in a dovecote or pigeon-house, or when in the nest before they are able to fly. If, when thus under the care of the owner, they are taken furtively, it is larceny.

"The reason of this principle is that it is difficult to distinguish them from other fowl of the same species. They often take a flight and mix in large flocks with the doves of other persons, and are free tenants of the air, except when impelled by hunger or habit, or the production or preservation of their young, they seek the shelter prepared for them by the owner. Perhaps when feeding on the grounds of the proprietor, or resting on his barn or other buildings, if killed by a stranger, the owner may have trespass, and if the purpose be to consume them as food, and they are killed or caught or carried away from the enclosure of the owner, the act would be larceny. But in this case there is no evidence of the situation they were in when killed, whether on the flight, a mile from the grounds of the owner, or mingled with the doves of other persons, enjoying their natural liberty. Without such evidence the act of killing them, though for the purpose of using them as food, is not felonious."

*Judgment below affirmed.*